IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARCIE H.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

        Defendant.
_____

Civ. No. 1:21-cv-933-MC

OPINION AND ORDER

MCSHANE, Judge:

        Plaintiff brings this action for judicial review of the Commissioner's decision denying her application for disability insurance benefits and supplemental security income. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). In 2019, Plaintiff filed an application for benefits, alleging disability as of September 1, 2014. Tr. 14.[2] After a hearing, the administrative law judge (ALJ) determined Plaintiff was not disabled under the Social Security Act until January 14, 2020, Plaintiff's 50th birthday. Tr. 26. Plaintiff argues the ALJ erred in finding her less-than fully credible. Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.
[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

1 – OPINION AND ORDER

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies his burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

The ALJ determined Plaintiff had the following severe impairments: degenerative disc disease, fibromyalgia, diabetes, migraines, obesity, obstructive sleep apnea, peripheral neuropathy, right shoulder impingement, depressive disorder, and anxiety disorder. Tr. 17. Plaintiff argues the ALJ did not capture the extent of her limitations. The Court disagrees.

Plaintiff alleged severe limitations. At the September 2020 hearing before the ALJ, Plaintiff testified that she no longer drove because "it's very, very difficult and painful for me to do things, like look out the back window to back up" and she got "severe leg cramps." Tr. 118. She began using a wheelchair in 2012 and obtained an electric wheelchair in 2015.[3] Tr. 125. Although she could "get up and walk five or ten feet," she would be unsteady on her feet. Tr. 126. With a walker, or with using her caregiver daughter as a "human walker", Plaintiff could walk 30 or 40 feet to her mailbox. Tr. 127. Although she was not able to make that walk every day, she could make it to the mailbox perhaps once or twice each week. Tr. 128.

Plaintiff's daughter did all the cooking. "I could stand long enough to, maybe make a sandwich, but I was so exhausted by the time I was done that carrying it back to my chair was hard." Tr. 128. Plaintiff needed assistance getting dressed and showering. Tr. 128.

Plaintiff testified that in 2014, she had migraines once or twice a week. Tr. 130. The migraines lasted "anywhere from a few hours to a few days" and Plaintiff would have to go to a dark room with "minimal lighting, minimal sounds, minimal movements." Tr. 131. Pain medication resulted in "a certain loss of clarity." Tr. 132. The medication made it hard to focus and concentrate. Tr. 132.

---

[3] The VE concluded that an individual requiring use of a wheelchair would be able to perform each of the jobs the ALJ ultimately concluded Plaintiff was capable of performing. Tr. 137. Plaintiff does not challenge the VE's conclusion.

3 – OPINION AND ORDER

Plaintiff felt fatigued every day. "If I have to get up and do anything, I'm easily fatigued." Tr. 132. Plaintiff's sleep apnea also contributed to her constant exhaustion. Tr. 132. Plaintiff testified:

> I could get up and walk with a cane or a walker for maybe 50 to 100 feet, but then I would have to sit down and put my feet up, because I would have shooting pain down my legs. And so I would sit in a recliner and put my feet up to help that. To alleviate that, I suppose. And, if I had a migraine, I would be able to get out of bed half the time. Maybe I could drive myself to the bathroom, but that was like all I could do and I have to keep the lights off for that. So I would have trouble with my feet—the plantar fibromatosis would cause significant pain. My back pain would not only be there, but it would start sending the shooting pains. If I was supposed to try and lift anything, that was essentially off the table. And so it was—I couldn't figure out a job that I could do and still be able to do what I needed—excuse me—to do to make it so that it would be a possibility. You can't recline and work.

Tr. 133.

The ALJ determined that while Plaintiff was clearly limited, the record-as-a-whole indicated Plaintiff could perform sedentary work with additional restrictions. As relevant here, these restrictions included: that Plaintiff needed an assistive device when walking more than 20 feet; that she could only occasionally reach overhead with her right, dominant arm; that she could perform simple, routine tasks; and she can tolerate occasional changes to work routines. Tr. 19. This determination is supported by substantial evidence in the record.

The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989)). The ALJ "may consider a wide range of factors in assessing credibility." *Ghanim v. Colvin*, 12-35804, 2014 WL 4056530, at *7 (9th Cir. Aug. 18, 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other

> treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter v. Astrue,* 504 F.3d 1028, 1040 (9th Cir.2007).

Plaintiff argues that rather than pointing to specific evidence in the record that contrasted with Plaintiff's testimony, the ALJ merely summarized the medical record. Plaintiff also argues the ALJ provided only a "boilerplate rejection" of Plaintiff's symptom testimony. While the Court agrees that the ALJ appropriately provided a summary of the medical records, the Court disagrees that the ALJ failed to point to specific parts of the record in concluding Plaintiff was not fully credible as to the extent of her limitations.

> The ALJ specifically noted:
>
> The record does not show the claimant engaging in specialized treatment with neurologist regarding her headaches. According to treatment notes from Ms. Noisworthy dated in April 2015, the claimant "has migraine type pain whenever she pushes herself up in her recliner that lasts only approximately 30 seconds.

Tr. 22.

When testifying, however, as to the severity of her migraines back in 2014, Plaintiff stated they occurred once or twice each week, lasted "anywhere from a few hours to a few days" and required Plaintiff to retreat to a dark, quiet room. Tr. 130-31. One would expect at least one note or comment in the voluminous medical record remotely approaching these types of symptoms.[4] If that note is in this record, the Court has not found it. Instead, one note that is in the record contrasts greatly with Plaintiff's testimony. As referenced by the ALJ, that note, contemporaneous to the relevant time period, states: "She has migraine type pain whenever she pushes herself up in her recliner that lasts only approximately 30 seconds." Tr. 640. Pointing out such a clear discrepancy between alleged symptoms and documented notes in medical records is,

---

[4] The ALJ clearly thought so, noting that despite testifying to debilitating migraines, "her treatment notes do not show her making similar allegations." Tr. 20.

5 – OPINION AND ORDER

on its own, a clear and convincing reason for finding Plaintiff not fully credible as to the extent of her limitations.

But the ALJ provided multiple other valid reasons for finding Plaintiff less-than fully credible as to her symptoms. For instance, the ALJ pointed to a lack of following through with recommended treatments from providers and conservative treatments that contrasted with Plaintiff's alleged symptoms. The ALJ noted records referencing "complaints of a 17-year history of right shoulder pain. . . . Despite this alleged long-term history of pain, she admitted that she 'has not had much in the way of treatment other than physical therapy.'" Tr. 20. The ALJ noted that despite being referred to physical therapy for her shoulder, "the claimant did not follow through with the referral to physical therapy and was discharged from treatment 'as she was unwilling to accept any of the times and dates offered through October and November and never contacted us to schedule beyond that.'"[5] Tr. 20.

The ALJ also pointed out that despite a treatment note stating Plaintiff was in her wheelchair "due to plantar fibromas," she not only declined surgery, but custom orthotics. Tr. 21. The ALJ stated, "[b]ased on the examination and review of the X-ray studies, [Beau J. Shelton, PA-C] opined that the 'best treatments' for the claimant's bilateral hip pain were physical therapy and water therapy. He also recommended cardiovascular exercise for her complaints of fibromyalgia pain." Tr. 22. The ALJ pointed to other treating notes that "recommended non-pharmacological modalities to manage her symptoms, including hydration, a low-carbohydrate diet, daily stretching, yoga, swimming, and cardiovascular exercise." Tr. 22. The ALJ pointed to Plaintiff's poor history of diabetes management, including failing to take medications, declining insulin, and not monitoring her blood sugars. Tr. 22.

---

[5] Relatedly, the ALJ noted objective imaging results of Plaintiff's shoulder "showed the joint spaces to be within normal limits and soft tissues to be unremarkable." Tr. 20.

6 – OPINION AND ORDER

The ALJ did not err in utilizing "ordinary techniques of credibility evaluation" in weighing the validity of Plaintiff's self-reported limitations. *Ghanim*, 763 F.3d at 1163; *Lingenfelter*, 504 F.3d at 1040. Although Plaintiff argues another interpretation of the record is reasonable, that is not a legitimate reason for overturning the ALJ's conclusions. *See Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) ("If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner.") (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996))). Because the ALJ provided "specific, clear and convincing reasons" for finding Plaintiff less-than credible regarding the extent of her limitations, the ALJ did not err in giving little weight to Plaintiff's testimony regarding those limitations.[6] *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Smolen v. Chater*, 80 F.3d 1273,1282 (9th Cir. 1996)).

## CONCLUSION

The ALJ's decision is free of legal error and supported by substantial evidence. The Commissioner's final decision is therefore AFFIRMED.

IT IS SO ORDERED.

DATED this 28th day of September, 2022.

                                                                /s/ Michael J. McShane
                                                                   Michael McShane
                                                            United States District Judge

---

[6] It must be noted that the ALJ did not completely reject Plaintiff's pain testimony. After all, the ALJ found Plaintiff was limited to sedentary work and would require an assistive device when walking more than 20 feet. Tr. 19. The ALJ also rejected the medical opinions in the record, finding those opinions not restrictive enough. Tr. 24. The ALJ merely found that Plaintiff's most severe alleged limitations were contrasted by the record-as-a-whole and that, despite "multiple limitations posed by her impairments . . . they do not appear to be so great as to preclude her from performing all work activity." Tr. 24.

7 – OPINION AND ORDER